Charles DINSEL

v.

The PENNSYLVANIA RAILROAD COMPANY, a corporation.

Civ. A. No. 13912.

United States District Court
W. D. Pennsylvania.

Sept. 19, 1956.

Evans, Ivory & Evans, Pittsburgh, Pa.,
for plaintiff.

Pringle, Bredin & Martin, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is a petition in a proceeding under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to direct C. W. Eckenrode, an employee of defendant corporation, to submit to an ophthalmological examination.

The facts are not in dispute that plaintiff and Eckenrode were employed together in the same gang, and that Eckenrode threw a stone from a freight car which struck plaintiff on the head while plaintiff was engaged in the furtherance of his employment in close proximity to the freight car where Eckenrode was engaged. Plaintiff predicates his primary allegation of negligence in defendant's permitting Eckenrode to participate in work requiring good vision when defendant knew or should have known that by reason of faulty vision, Eckenrode was incapable of participating in the job to which he was entrusted with safety to his fellow employees.

Whether defendant is or is not liable depends, to a great degree, on the activities of Eckenrode. In resolving the question herein posed, I am well aware that Eckenrode is not a defendant to this proceeding. Upon a most exhaustive examination of the authorities by both myself and counsel, I must consider the question as one of first impression without legal precedent.

Defendant advances the proposition that this court retains no authority to direct a witness to submit to medical examination. Plaintiff, on the other hand, suggests that witness Eckenrode submit to an ophthalmological examination by Dr. Carlisle E. McKee. Defense counsel has in no way disputed the capabilities of Dr. McKee in rendering such examination. I am advised by one of my associate judges, who is personally acquainted with Dr. McKee, that he is held in the highest esteem and commands an excellent reputation in the field of ophthalmology.

It is the duty of the court to make positive that every trial is fairly and impartially conducted and that the verdict of the jury be rendered on the issues raised by the pleadings. It would, therefore, appear to be the duty of the court to make positive that the jury would not have to speculate or conjecture as to the condition of the eyesight of the employee, Eckenrode, and to extend every help that might be possible, through the aid of medical science, to enlighten the court and jury of the vision of Eckenrode on the date that the accident occurred.

I believe authority exists in the District Court, when necessary to a proper consideration of a case by a court and jury, to appoint, without consent of the parties, an appropriate specialist in the field where a disputed issue of fact is raised, to express an opinion on the facts in dispute without prejudice, however, of either party to call, examine and cross-examine witnesses as if said examination had not been directed by the court, and that the examination made by order of court shall function as prima facie evidence of the facts found and conclusions reached, unless rejected by the court. It is further proper to tax the costs of such an examination together with the fees of said witnesses as costs of a case. Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919.

The law is further established that plaintiff might examine Eckenrode as a hostile witness and not be bound by his testimony. Eckenrode v. Pennsylvania R. Co., 3 Cir., 164 F.2d 996; Johnson v. Baltimore & O. R. Co., 3 Cir., 208 F.2d 633.

In the present status of the record, however, I am unable to conclude with certainty whether Eckenrode's testimony will squarely pose the issue of his visual acuity, and therefore would require his submission to ophthalmological examination prior to his taking the stand. Nor am I presently informed whether either party intends to call Eckenrode as a witness.

I shall, therefore, hold in abeyance the entry of final decision until the pre-trial conference to commence October 2, 1956, at which time the court will interrogate Eckenrode in order to elicit such information upon which a determination might be made as to whether the jury would be required to speculate or conjecture as to the condition of Eckenrode's eyesight. [See also, 144 F.Supp. 883.]

In connection therewith, I shall direct the United States Clerk of Courts to have served by the United States Marshal upon said employee Eckenrode a subpoena directing his appearance at pre-trial conference in the above action on October 2, 1956, at 10:00 A.M. The costs thereof to be taxed against said action.

An appropriate order is entered.